## UNITED STATES DISTRICT COURT
## DISTRICT OF WESTERN LOUSIANA

| | |
|---|---|
| DWAYNE PITRE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| v. | **DEMAND FOR A JURY TRIAL** |
| ACADIAN AMBULANCE SERVICE, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Dwayne Pitre, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Acadian Ambulance Service Inc. ("Defendant"). Plaintiffs assert the following allegations based on his personal knowledge as to his own allegations and based on information and belief and public documents as to the remaining allegations after counsel's investigation.

## BACKGROUND

1.      This matter arises from Defendant's failure to implement reasonable, industry standard cybersecurity measures required to protect Plaintiff and Class Members' personally identifiable information ("PII") and protected health information ("PHI") ("Private Information").

2.      Because of Defendant's failures to live up to its obligations to implement such reasonable cybersecurity protections, Defendant allowed a notorious cybergang to infiltration its information systems and steal the value and highly private PII and PHI of Plaintiff and the proposed Class Members (the "Data Breach").

3.      With their Private Information now in the hands of cybercriminals, Plaintiff and the proposed Class Members are left to fear for their financial stability and that their private medical

1

information is now in the hands of unauthorized third parties bent on misusing that information.

## THE PARTIES

4.      Plaintiff Dwayne Pitre is a natural person and a resident and citizen of Washington, Louisiana, where he intends to remain.

5.      Defendant, Acadian Ambulance Service Inc. is a Louisiana corporation with its principal place of business at 130 E. Kaliste Saloom Road, Lafayette. LA 70508.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, and because minimal diversity exists. Specifically, the proposed Class contains around 10,000,000 persons some of whom will reside in other states, including Tennessee, which Defendant operates in at least two counties.

7.      This Court has personal jurisdiction over Defendant, which operates its headquarters in this State.

8.      This Court is the proper venue pursuant to U.S.C. § 1391(a)(1) because a substantial portion of the events giving rise to this action occurred in this District. Defendant is domiciled in this District and many of the actions and inactions, if not all of them, took place in this District.

## FACTUAL BACKGROUND

### *The Data Breach*

9.      In June 2024, the notorious cybergang Daixin infiltrated Defendant's information systems, performed reconnaissance inside Defendant's system, located a trove of valuable information, and then successfully walked out the proverbial door with the data of around ten million individuals before Defendant even noticed what was happening ("the Data Breach").

10.    The data stolen reportedly includes Plaintiff's and Class Members' names, dates of birth, phone numbers, medical history, case history, employment information, symptoms, drug use, and employee information.[1]

11.    The individuals affected by Defendant's failure to implement reasonable cybersecurity including its current and former employees as well as millions of patients who have used Defendant's ambulance services.

12.    According to Daixin, they have demanded Defendant pay a $7 million ransom for the stolen data. Though Defendant made a small counteroffer, Plaintiff does not believe Defendant has done anything to prevent his data from being released to even more cybercriminals on the Dark Web and to the public at large.

13.    Moreover, it is common for cybercriminals to demand a ransom payment even though the data has already been circulated on Telegram among significant numbers of cybercriminals whose entire occupation is extortion, identity theft, and financial fraud.

14.    In this Data Breach, Daixin has already threatened to release all the stolen data to the Dark Web, after its ransomware attack also interrupted Defendant operations by taking down at least portions of its information systems.[2]

---

[1] Steve Adler, *Daixin Team Claims to Have Stolen 10 Million Unique Records from Acadian Ambulance*, THE HIPAA JOURNAL (July 25, 2024), https://www.hipaajournal.com/acadian-ambulance-ransomware-attack.

[2] Stephen Marcantel, *Patients' Information Stolen in Acadian Ambulance Breach, Hacker Group Claims*, THE ACADIANA ADVOCATE (July 25, 2024), https://www.theadvocate.com/acadiana/news/hacker-group-takes-credit-for-acadian-ambulance-attack/article_2c9e46ae-49dd-11ef-b609-8fcc44d46d30.html.

15.    Recently, Defendant has admitted that the Data Breach affected patients' PHI. Though Defendant apparently has not confirmed the number of people affected, the Data Breach reportedly included the PII and/or PHI of approximately ten million people.[3]

16.    The Data Breach and associated harm was also foreseeable, which Defendant effectively admitted when it noted the prevalence of such attacks:

> Several recent cyber incidents reported in the national media have affected numerous large companies, including prominent technology and healthcare firms. The most recent software incident affected some airlines, public service, and EMS systems.
> Additionally, in the last year, several EMS and healthcare organizations have been the victim of cyber security incidents with the intent by the criminal actors to disable services, as well as infiltrate and steal private health information.

***Plaintiff's Experience***

17.    Plaintiff Pitre is a former patient of Defendant Acadian Ambulance Service.

18.    In exchange for receiving services, Plaintiff was forced to convey his PII and PHI to Defendant, and upon information and belief, Plaintiff's Private Information was stolen as part of the Data Breach.

19.    Since the Data Breach, Plaintiff has seen an increase in spam calls seeking to further exploit him and apparently to subject him to further identify theft and fraud.

20.    Plaintiff has already begun to see the effects of Defendant's failure. For example, Plaintiff has experienced fraud on his bank account whereby a cybercriminal was able to steal about $2,000 from his accounts. Plaintiff had to spend significant time investigating the fraud, attempting to determine how the fraud occurred, and attempting to be reimbursed.

21.    Though Plaintiff was eventually reimbursed, Plaintiff had to spend his own

---

[3] *Acadian Ambulance Confirms Hackers Accessed Patients' 'Protected Health Information'*, (Updated July 25, 2024), https://www.kadn.com/news/investigates/acadian-ambulance-confirms-hackers-accessed-patients-protected-health-information/article_491a20e8-4ac6-11ef-a164-77534cf0bdec.html.

valuable time responding to the fraud, which would not have happened but for Defendant's failure to implement reasonable, industry standard cybersecurity safeguards. Moreover, this example of fraud underscores the types of harm Plaintiff, and the Class will now have to spend years attempting to prevent or recover from.

22.     Because of Defendant's failures and the resulting identity theft, Plaintiff has had to spend and will continue to spend significant time and effort responding to the Data Breach, including to recover from identity theft, spending time on the phone with banks, changing payment cards and payment card information on bill pay sites, changing passwords, reviewing bank statements and credit history, submitting a police report, and other tasks. This time was and will continue to be spent because of Defendant's failures to implement the legally required safeguards and Defendant must compensate Plaintiff for that time that he will never get back.

23.     Because Defendant still has Plaintiff's Private Information, he is entitled to seek injunctive relief requiring Defendant to remediate its cybersecurity vulnerabilities and to help protect against future data breaches.

***Healthcare Companies Like Defendants Are Common Cyber Targets***

24.     Defendant was on notice that it may be the target of cyberattack and that Plaintiff and the proposed Class Members would suffer widespread harm as a result if Defendant did not properly safeguard their Private Information, including through the use of appropriate logging, monitoring, and alerting systems sufficient to identify malicious activity and alert Defendant so that it could stop the attack before the attackers had time to locate the Private Information, stage it, and export that data from Defendants systems.

25.     Indeed, Defendant should have known about the threats from Daixin because they are a well-known cybergang that targets healthcare entities, as detailed in a joint cybersecurity

alert from the Cybersecurity and Infrastructure Security Agency and the Department of Health and Human Services twenty months before the Data Breach.[4]

26.     Indeed, the American Hospital Associated issued a similar warning.[5]

27.     In recent years, the nature of ransomware attacks has changed, and now almost always include a double extortion strategy whereby companies are asked to pay a ransom both to regain access to encrypted files and also to prevent the cybercriminals from publishing the stolen data on the Dark Web.

28.     Moreover, the number of data breaches in North America has climbed dramatically in recent years, especially against healthcare companies.

29.     According to a Chief Strategy Officer at Clear DATA, "[i]t's no secret that healthcare is the industry most plagued by data breaches. Patient data is the most valuable, making it targeted by bad actors."[6]

30.     In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[7]

---

[4] Steve Adler, *Government Issues Warning to Healthcare Organizations About Daixin Team Extortion and Ransomware Attacks*, THE HIPAA JOURNAL (Oct. 24, 2022), https://www.hipaajournal.com/warning-healthcare-organizations-daixin-team-extortion-ransomware; Cybersecurity and Infrastructure Sec. Agency, *#StopRansomware: Daixin Team*, CYBERSECURITY ADVISORY (Oct. 26, 2022), https://www.cisa.gov/news-events/cybersecurity-advisories/aa22-294a.

[5] Am. Hosp. Assoc., *Daixin Team' Ransomware Gang Targeting Hospitals, Public Health Organizations*, AHA CYBERSECURITY ADVISORY (Oct. 24, 2022), https://www.aha.org/advisory/2022-10-24-daixin-team-ransomware-gang-targeting-hospitals-public-health-organizations.

[6] Sanjay Cherian, "*Healthcare Data: The Perfect Storm*, (January 14, 2022), https://www.forbes.com/sites/forbestechcouncil/2022/01/14/healthcare-data-the-perfect-storm/?sh=28523ee56c88.

[7] Identity Theft Resource Center, *2019 End-of-Year Data Breach Report,* (Jan. 18, 2020), https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf.

31.    Of the 1,473 recorded data breaches, 525 of them, or 35.64%, were in the medical or healthcare industry.[8]

32.     According to the Identity Theft Resource Center's January 24, 2022, report for 2021, "the overall number of data compromises (1,862) is up more than 68 percent compared to 2020. The new record number of data compromises is 23 percent over the previous all-time high (1,506) set in 2017. The number of data events that involved sensitive information (Ex: Social Security numbers) increased slightly compared to 2020 (83 percent vs. 80 percent)."[9]

33.    Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that information.

34.    Moreover, Defendant should have been aware of the risk and harms attendant with its lax cybersecurity preparedness given the ubiquity of data breaches in the news virtually every day. Indeed, the data breach of HCA Healthcare's information system, which affected millions of patients, was widely reported across the national and industry news.[10]

35.    If Defendant had paid any attention to the risks it faced from the collection and storage of highly sensitive Private Information, it would have understood the need to protect such data. Indeed, because of the ubiquitous nature of reporting on data breaches, it is reasonable to infer that Defendant did know about these prevailing cybersecurity risks and simply chose not to

---

[8] *Id.*

[9] *See* "Identity Theft Resource Center, *2021 Annual Data Breach Report Sets New Record for Number of Compromises*, (Jan. 24, 2022), https://www.idtheftcenter.org/post/identity-theft-resource-center-2021-annual-data-breach-report-sets-new-record-for-number-of-compromises.

[10] Steve Adler, *First Lawsuit Filed Against HCA Healthcare Over 11 Million-Record Data Breach*, THE HIPAA JOURNAL (July 14, 2023), https://www.hipaajournal.com/first-lawsuit-filed-against-hca-healthcare-over-11-million-record-data-breach; Aimee Picchi, *HCA Healthcare Says Hackers Stole Data on 11 Million Patients*, CBS NEWS (July 11, 2023), https://www.cbsnews.com/news/hca-healthcare-data-breach-hack-11-million-patients-affected.

implement the necessary cybersecurity safeguards.

***Defendant Collects and Stores Plaintiff's and Class Members' Valuable Private Information***

36.     Defendant collected the Private Information of Plaintiff and Class Members as part of their agreements for employment and/or for ambulance services.

37.     Given the widespread, multi-state scope of Defendant's operations, it collected, stored, and derived a benefit from the Private Information of millions of people, including Plaintiff.

38.     By collecting such Private Information, Defendant knew it was subject to binding legal requirements to appropriately protect that Private Information, including the cybersecurity regulations promulgated by the HIPAA Privacy and Security Rule 45 C.F.R. Pt. 164.

39.     Though Plaintiff and Class Members took available reasonable steps to protect their own privacy, including by not knowingly conveying such information to entities who fail to protect it, Defendant failed to live up to its obligations notwithstanding the millions of people it collected data on.

40.     The data stolen presents a significant privacy violation. Indeed, most Americans would likely be highly offended that a healthcare organization negligently allowed their private health information, including their symptoms, drug use, and medical histories to be disclosed to any public forum, let alone a public forum well-known to be rife with cybercriminals.

41.     Beyond the serious privacy violations, the disclosed Private Information is now a highly valuable commodity.

42.     Private Information is highly valuable to consumers, who expect to be paid for the use of their Private Information, and to cybercriminals who can exploit the information for extortion, embarrassment, identity theft, and financial fraud.

43.     As Shoshana Zuboff has opined, the mass collection of data on virtually all aspects

of our lives in a way that allows businesses to capitalize on our behavior has created a serious

power imbalance and has turned data into nothing more than a commodity that businesses use to

predict and attempt to modify consumer behavior for their own gain.[11]

44.     Moreover, consumers can now sell their own unused data for personal profit. For

example, consumers can sell their online activity history to Nielson can earn up to $50 per month

in value. DataCoup likewise allows consumer to sell their data and activity.[12]

45.     Defendant included several ways in which it would use its customers' information

in its privacy policy, which included for medical purposes, to run the business, billing, compliance

with the law, and responding to legal actions, among other things.

**We may use and share you information as we:**

**Our Uses & Disclosures**

- Treat you
- Run our organization
- Bill for your services
- Help with public health and safety issues
- Do research
- Comply with the law
- Respond to organ and tissue donation requests
- Work with a medical examiner or funeral director
- Address workers' compensation, law enforcement, and other government requests
- Respond to lawsuits and legal actions

46.     None of the authorized uses of Plaintiff's and Class Members' PII included

disclosure to unrelated third parties.

---

[11] Noah Kulwin, *Shoshana Zuboff on Surveillance Capitalism's Threat to Democracy*, INTELLIGENCER (Feb. 24, 2019), https://nymag.com/intelligencer/2019/02/shoshana-zuboff-q-and-a-the-age-of-surveillance-capital.html (discussing Ms. Zuboff's book on Big Data and Surveillance capitalism, a term she coined).

[12] Kevin Mercadante, *10 Apps for Selling Your Data for Cash*, BEST WALLET HACKS (Nov. 18, 2023), https://wallethacks.com/apps-for-selling-your-data.

47.     And for PHI, Defendant explained that it never shares such information with written permission.



48.     Moreover, Defendant admitted that it is "required by law to maintain the privacy and security of your protected health information."[13]

***Plaintiffs and Class Members Now Face Years of Harm***

49.     Because of Defendant's failures, Plaintiff and the proposed Class Members face years of exposure to identity theft and fraud because their Private Information is in the hands of cybercriminals whose entire job is to misuse such data for nefarious means.

50.     Once stolen, PII and PHI are used for nefarious and criminal means for years. Indeed, cybercriminals often wait a year before using such information because they know companies often provide only the absolute minimum credit monitoring services.

51.     Beyond the identity theft that Plaintiff has already suffered, the economic harm of lost time, and the serious intangible harm of the privacy violation, Plaintiff and the proposed Class

---

[13]     Acadian Ambulance Service, *Notice of Privacy Practices* (Oct. 1, 2022), https://acadianambulance.com/wp-content/uploads/AASI-Notice-of-Privacy-Practices-Effective-10-1-2022.pdf.

Members face a significant increase in the risk of identity theft in the future because Defendant allowed their social security numbers and financial data to fall into the hands of identity thieves.

52.     Moreover, cybercriminals can apply techniques and procedures to use Plaintiff's and Class Members' data to look up and access even more data about them to fill any gaps necessary to perpetuate their crimes (for example, to get past any security questions). These techniques include the use of fullz packages, which are full sets of data about a person. Through the use of these lists or fullz packages, criminals can gain additional knowledge about targets and maximize the harm done to Plaintiff and Class Members because of Defendant's Data Breach.

53.     The various harms Plaintiff and Class Members have suffered and will continue to suffer include, but are not limited to:

    a.  The loss of control over their privacy;

    b.  Identity theft and fraud;

    c.  Costs associated with attempting to mitigating the harm associated with Defendant's failures, including credit monitoring and identity theft protections;

    d.  Monetary harms in the form of lost time spent responding to Defendant's failures (e.g., calling banks, reviewing account and credit statements, and attempting to take back over accounts or close fraudulently opened accounts, changing payment card information on bill-pay site, and much more).

    e.  Costs associated with Dark Web monitoring;

    f.  Lowered credit scores because of fraud and identity theft; and among other harms,

    g.  The continued risk of further identity theft and fraud stemming from cybercriminals have access to all the necessary information to perpetrate such crimes.

54.     Through this class action, Plaintiff and Class Members seek redress for these harms,

including the emotion and mental anguish associated with the serious privacy harm that Defendant perpetrated when it chose not to implement the reasonable cybersecurity measures required by law and because it knew with substantial certainty that a failure to reasonably protect Private Information would lead Plaintiff and the proposed Class Members to suffer the above harms.

***Defendant's Duty to Implement Reasonable, Industry Standard Cybersecurity Safeguards***

55. Defendant Acadian Ambulance is a covered entity under HIPAA and is required to adhere to the cybersecurity regulations imposed on all such companies, including its prohibition on the unauthorized disclosure of PHI. 45 C.F.R. § Pts. 160, 164.

56. Despite these requirements, Defendant failed to implement reasonable cybersecurity measures even though it knew and understood the consequences its patients and employees would suffer. Though discovery will reveal the true depth of Defendant's failures, it clearly failed to implement reasonable logging, monitoring, and alerting systems, including sufficient EDR and XDR solutions, which are designed to identify malicious activity on a company's network and alert engineers and cybersecurity staff in time to be able to stop the attack and prevent the theft of Private Information. If Defendant had these systems in place, cybercriminals would not have been able to steal such a trove of data before Defendant could identify and stop the attack.

57. In addition, Defendant likely failed to implement some of the following measures:

a. Conduct sufficient risk assessments, vulnerability scans, and penetration tests using independent, third-party consultants free from conflicts of interest;

b. Maintain sufficient incident response, business continuity, and disaster recovery plans with tabletop exercises to ensure that such plans were updated and sufficient to allow Defendant to respond to cybersecurity incidents;

c. Implement sufficient cybersecurity and phishing awareness training, including the use of test emails and retraining when necessary;

d. Implement multifactor authentication with Number Match to ensure only authorized individuals could remotely access Defendant's information systems; and

e. Maintain and enforce data minimization, including through the use of technical capabilities to identify the location of PII and PHI on Defendant's systems, and administrative controls to ensure only the required PII and PHI was kept and all nonessential data was deleted.

58.     Beyond Defendant's duty to implement and maintain these reasonable cybersecurity standards because of its obligations under HIPAA, Defendant was also obligated to implement the same because of its common law duties and because the failure to do so is a violation of Section 5 of the FTC Act, which prohibits unfair and deceptive acts and practices. *See, e.g.*, Fed. Trade Comm'n v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

59.     Because a failure to implement reasonable cybersecurity practices is a violation of the FTC Act, the FTC has offered guidance to businesses.[14]

60.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

61.     The FTC has brought enforcement actions against businesses for failing to protect

---

[14] Fed. Trade Comm'n, *Start with Security: A Guide for Businesses*, FTC.Gov (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62.     Acadian Ambulance failed to properly implement basic data security practices. Acadian Ambulance's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

63.     Acadian Ambulance was fully aware of its obligation to protect its patients' PII and PHI, as well as that of its current and former employees, because of its position as a healthcare provider and an employer. Acadian Ambulance was also aware of the significant repercussions that would result from its failure to do so.

## CLASS ALLEGATIONS

64.     Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class:

> All individuals whose Private Information was potentially affected by Acadian Ambulance's 2024 Data Breach.

65.     Excluded from the Classes is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

66.     Plaintiff reserves the right to amend the class definition before moving for Class Certification.

67.    **Numerosity:** The Class Members here are more than sufficient to satisfy Rule 23's requirements, as the number of affected people could be in the millions.

68.    **Commonality:** Questions of law and fact predominate this action over any individual questions because all proposed Class Members were subject to the same Data Breach and the same failures on Defendant's part. These common questions include:

a.    Whether and to what extent Defendant had a duty to protect the PII and PHI of Class Members;

b.    Whether Defendant was negligent in collecting and storing Plaintiff and Class Members' PII and PHI;

c.    Whether Defendant had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d.    Whether Defendant took reasonable steps and measures to safeguard Plaintiff and Class Members' PII and PHI;

e.    Whether Defendant failed to adequately safeguard the PII and PHI of Class Members;

f.    Whether Defendant failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

h.    Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Defendant's wrongful conduct;

i.    Whether Plaintiff and Class Members are entitled to restitution because of

Defendant's wrongful conduct;

j.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k.   Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

69.   **Typicality:** Plaintiff's claims are typical of the proposed Class.

70.   Like all Class Members, Plaintiff's Private Information was disclosed to the same cybercriminals in the same Data Breach and because of the same failures on Defendant's part. Moreover, Plaintiff advances the same legal theories that Class Members could bring, and that are typical of data breach class actions.

71.   There are no unique questions of law and only minimal damages differences may exist, which does not defeat class certification.

72.   **Adequacy:** Plaintiff is an adequate class representative. Plaintiff is committed to pursuing this action against Defendant and will do so to the best of his abilities. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel is competent and experienced in litigating class actions, including extensive experience in data breach litigation.

73.   **Superiority:** A class action is undoubtedly superior to traditional litigation because of the sheer size of the proposed class. A class action is the only way to efficiently and effectively litigate this matter, will prevent inconsistent rulings, and will save significant resources both for Plaintiff's counsel and for Defendant. A class action avoid unnecessary duplication of evidence, discovery tasks, and other litigation requirements, and ensure that class members receive equal treatment as equal members of the Class.

## COUNT I
## NEGLIGENCE AND NEGLIGENCE *PER SE*
### (on behalf of Plaintiff and the Proposed Class)

74.    Plaintiff realleges and incorporates all preceding allegations herein.

75.    Acadian Ambulance knowingly collected and maintained Plaintiff's and Class Members' Private Information and had a duty to exercise reasonable care in safeguarding such information from being stolen or disclosed by or to cybercriminals or other third parties. That duty included, among other things, designing, maintaining, and testing Acadian Ambulance's cybersecurity controls to ensure that Plaintiff's and Class Members' Private Information in Defendant's possession was adequately secured and protected and were not accessible to cybercriminals without authorization, and that Acadian Ambulance employees tasked with maintaining such information were adequately trained on security measures regarding the security of current and former employees and patients' PII and PHI.

76.    As a condition of employment and/or of using Defendant's services, they were required to provide their PII and PHI to Defendant.

77.    Defendant collected, stored, and maintained Plaintiff's and Class Members' PII and PHI knowing full well that it was legally required to implement reasonable, industry standard cybersecurity safeguards and to comply with HIPAA regulations.

78.    Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

79.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

80.    By voluntarily undertaking and assuming the responsibility to collect and store this

data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

81.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced, by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

82.    The requirements under the FTC Act, as memorialized in the various FTC consent orders, form a basis for negligence per se because the FTC Act was implemented to protect consumers from unfair and deceptive practices such as the acts and practices here. Alternatively, however, the FTC Act and its interpreting document and consent orders inform the standard of care.

83.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

84.    The standards and guidelines set forth in HIPAA were implemented to protect patients from privacy harms inherent when Defendant's fail to reasonable protect PHI, as happened

here. The HIPAA standards thus form a basis for negligence per se or, alternatively, inform the standard of care required.

85.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks adequately protected the Private Information.

86.    Defendant's duty of care to use reasonable security measures also arose because of the special relationship that existed between Defendant and the Class Members, including Plaintiff. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of being patients or employees of Defendant.

87.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

88.    Moreover, Defendant had a duty to practice proper data hygiene and to removal all data that no longer served its original purpose and that Defendant was not legally required to retain.

89.    Defendant had a duty to promptly notify Plaintiff of the Data Breach.

90.    Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

91.    Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class

Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.      Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.      Failing to adequately monitor the security of their networks and systems, including by failing to implement sufficient monitoring, logging, and alerting systems— such as EDR, XDR, and SIEM—to enable it to identify malicious activity and attempts in a timely manner so that the attack could be stopped before the hackers had a chance to search the information systems for valuable data, stage that data, and then exfiltrate it without being detected;

c.      Allowing unauthorized access to Class Members' Private Information;

d.      Failing to remove former patients' and employees' Private Information it was no longer required to retain pursuant to regulations, and

e.      Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

92.      Defendant violated Section 5 of the FTC Act and HIPAA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

93.      Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act and HIPAA were intended to protect and the type of harm that resulted from the

Data Breach was the type of harm that the statutes were intended to guard against.

94.    Defendant's violation of Section 5 of the FTC Act and HIPAA constitutes negligence per se, and alternatively these regulatory frameworks inform the standard of care.

95.    The FTC has pursued enforcement actions against businesses, which, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

96.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendant's inadequate security practices.

97.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

98.    Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

99.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems or transmitted through third party systems.

100.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

101.     Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

102.     Defendant was in the best position to protect against the harm suffered by Plaintiff and the Class because of the Data Breach.

103.     Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

104.     Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

105.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

106.     There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

107.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and

opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

108.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

109.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

110.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

111.    Plaintiff realleges and incorporates all preceding allegations herein.

112.    Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of obtaining services and/or employment at Defendant. Plaintiffs

and Class Members paid money or employment to Defendant in exchange for services.

113.     Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiffs and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

114.     Defendant accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing medical products and/or services to Plaintiffs and Class Members.

115.     Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

116.     This implicit agreement arose in part because of Defendant's representations on its website and notice of privacy practices and as a general understanding that Defendant would comply with its legal obligations.

117.     In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including HIPAA and FTC guidelines on data security) and were consistent with industry standards.

118.     Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with

prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

119.   The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

120.   On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

121.   Defendant further promised to comply with industry standards in its privacy notice and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

122.   Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

123.   Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

124.   Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

125.   Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's

actual and/or express terms.

126.    Failure to comply with applicable law is a failure to perform in compliance with the covenant of good faith and fair dealing.

127.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

128.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised because of the Data Breach.

129.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

130.    As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse;

and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

131.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

132.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class and in the alternative pursuant to Rule 8)**

133.    Plaintiff realleges and incorporates all preceding allegations herein.

134.    Plaintiff brings this Count in the alternative to the breach of implied contract count above.

135.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they paid Defendant and/or its agents for the provision of services and/or with the value of their time as employees and in so doing also provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and should have had their Private Information protected with adequate data security, which was an implicit part of that transaction because it was understood that Defendant would comply with its legal obligations under HIPAA, the FTC Act, and the common law.

136.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted

to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

137.    Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

138.    Defendant acquired the Private Information through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged.

139.    If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would have entrusted their Private Information at Defendant or obtained services at Defendant.

140.    In the alternative to the breach of contract claim above, Plaintiff and Class Members have no adequate remedy at law.

141.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

142.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

143.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

144.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

145.    Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT IV
## BREACH OF BAILMENT
### (On Behalf of Plaintiff and the Class)

146.    Plaintiff realleges and incorporates all preceding allegations herein.

147.    Plaintiff and the Class delivered their PII and PHI to Defendant as part of the implicit agreement described above and only for the limited purposes of their employment and/or ambulance services.

148.    Defendant was not permitted to use the PHI or PII for its own purposes except to provide services and/or employment to Plaintiff and the Class.

149.    Defendant was expected to delete such data when it was no longer necessary to provide the required services or employment, and Defendant was no longer required to by law to retain such PII and/or PHI.

150.    At no point did Plaintiff or the Class relinquish ownership over their PII and PHI and expected that it would be returned or deleted without disclosure to unauthorized third parties.

151.    Defendant breached the bailment agreement by failing to protect the data in accordance with Defendant's legal obligations and thus allowing the data to be disclosure to unauthorized cybercriminals, which subjected Plaintiff and the Class to the harms outlined above.

152.    Defendant must compensate Plaintiff and the Class for their injuries and must be required to implement cybersecurity safeguards sufficient to guard against further breaches of the bailment Agreement.

153.    Alternatively, Defendant must destroy Plaintiff and the Class Members data if permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, pray for relief as follows:

a.  For an order certifying the Class as defined herein, and appointing Plaintiff's counsel as Class Counsel;

b.  For equitable relief as defined herein and to require Defendant to implement and maintain reasonable cybersecurity protections;

c.  For an order appoint Plaintiff as a Class Representative;

d.  For an award of damages, including actual, nominal, consequential, compensatory, and punitive damages, as allowed by law;

e.  For an award of attorneys' fees, expenses, and costs, as allowed by law;

f.  For an award of pre- and post-judgment interest; and

g.  Such other relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 12, 2024                    Respectfully submitted:

*/s/Andrew A. Lemmon*
Andrew A. Lemmon (LA Bar # 18302)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5301 Canal Boulevard, Suite A
New Orleans, LA 70124
Tel: (985) 783-6789
alemmon@milberg.com

J. Gerard Stranch, IV*
Grayson Wells*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

*Pro Hac Vice applications forthcoming*

*Counsel for Plaintiff and the Proposed Class*